# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**SANDRA VIGIL and ROBERTA VIGIL,**

    **Plaintiffs,**

    vs.                                              CIV No. 01-920 JP/LFG

**CITY OF ALBUQUERQUE, SCOTT BARNARD and TROY GIBSON,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On May 8, 2002, the Defendants filed a Motion for Summary Judgment on Qualified Immunity Grounds (Doc. No. 41). After considering the briefs, the relevant law, and the arguments offered by the parties during the June 14, 2002 pretrial conference, this Court has determined that the Defendants' motion should be granted as to the Plaintiffs' wrongful arrest claim and denied as to the Plaintiffs' excessive force claim.

I.     STANDARD OF REVIEW

A court should grant summary judgment only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Supreme Court has observed that a genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially, the moving party carries the burden of establishing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the party opposing

the motion, who must come forward with evidence, beyond mere allegations or denials of the pleadings, which shows that a genuine issue of material fact exists. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In deciding a motion for summary judgment, courts should "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc*, 912 F.2d 1238, 1241 (10th Cir. 1990).

II.     FACTUAL BACKGROUND

This case arises out of a June 12, 1999 confrontation between the Plaintiffs, Sandra and Roberta Vigil, and the two Defendant Albuquerque Police Department officers. That day, Officer Barnard and Officer Gibson went to an apartment complex at 5600 Gibson SE, in response to a call from the apartment manager, Cindy Dalton. Ms. Dalton reported to the officers that she had argued with a tenant, Paul Behncke, and that Mr. Behncke had behaved in a threatening manner. Ms. Dalton alleged that Mr. Behncke refused to return a television that she had loaned to him. She also complained that he had parked his truck and trailer in an improper spot in the parking lot of the apartment complex.

Officer Gibson and Officer Barnard went to Mr. Behncke's apartment and spoke with him on the balcony outside of the apartment's front door. Mr. Behncke agreed to move his truck, and he went inside the apartment to change out of his bathing suit and into other clothes. The officers followed him inside. Plaintiff Sandra Vigil, her three-year-old son, and her sister, Viola Reed, were in the apartment at this time. Viola was Mr. Behncke's girlfriend. Plaintiff Roberta Vigil, Sandra and Viola's sister, arrived at the apartment soon afterward. A maintenance man from the apartment complex entered the apartment to remove the TV that Ms. Dalton wanted returned.

2

The parties' accounts of the events that followed differ significantly. According to the Plaintiffs, Viola began irritating Officer Gibson by making some sarcastic comments. Roberta Vigil walked over to Viola to tell her to be quiet. Officer Gibson grabbed Roberta's arm, sprayed mace in her eyes, pulled her hair, threw her down on the ground, and placed handcuffs on her. Officer Barnard emerged from another room of the apartment during the struggle, and he joined in restraining Roberta. Roberta is small in stature– 5'1" and 105 lbs.– and she did not physically resist the officers. Rather than struggle, she allowed herself to go limp. Officer Gibson also sprayed mace at Sandra Vigil and threw her against a sink or against a sofa.

The Defendants offer a different version of what happened in the apartment. They maintain that Officer Gibson was attempting to prevent Roberta, Sandra, and Viola from interfering in the officers' investigation of Paul Behncke. As tension mounted, Officer Barnard tried to calm Roberta down. She reacted by backhanding him on the shoulder and pushing him. Roberta struggled with Officer Barnard, and he ultimately had to spray mace at her and grab her by the hair in order to restrain her. Both Officer Barnard and Officer Gibson participated in handcuffing Roberta. Meanwhile, Officer Gibson had struggled with Sandra and had sprayed mace at her.

The parties agree that Roberta and Sandra were then placed under arrest. The Plaintiffs were charged with battery, disorderly conduct, and resisting arrest. Following a trial in Metropolitan Court, a judge convicted the Plaintiffs of resisting arrest but acquitted them of the other charges. Sandra does not claim to have suffered any long-term physical injury or psychological injury as a result of her encounter with the officers. Roberta claims to have suffered a number of serious injuries, including permanent damage to her elbows, as well as post-

traumatic stress disorder.

On May 8, 2001, the Plaintiffs filed their original Complaint in state court, and on July 18, they filed an Amended Complaint. On August 10, 2001, the Defendants removed the suit to federal court. The Plaintiffs filed a Second Amended Complaint (Doc. No. 9) on October 1, 2001. On May 8, 2002, the Defendants filed a Motion for Summary Judgment on Qualified Immunity Grounds (Doc. No. 41), the subject of this Memorandum Opinion and Order.

III. ANALYSIS

Qualified immunity prevents "government officials performing discretionary functions" from being held liable "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), courts approach motions for summary judgment based on qualified immunity differently than other motions for summary judgment. The Tenth Circuit has explained that once "'a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff,' and the plaintiff 'must first establish that the defendant's actions violated a constitutional or statutory right.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).

The United States Supreme Court recently clarified the steps which courts should follow in analyzing qualified immunity defenses, in the context of excessive force claims brought under the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194 (2001). To begin, the Supreme Court explained, "[a] court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts

4

alleged show the officer's conduct violated a constitutional right?" Id. at 201. If a court finds that "a 'favorable view' of the facts alleged show the violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established' at the time of the defendant's unlawful conduct." *Holland,* 268 F.3d at 1186, quoting *Saucier*, 533 U.S. at 201. "For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997). The Supreme Court emphasized in *Saucier* that courts examining the issue of clearly established rights must consider this question: "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." 533 U.S. at 202. An officer's "mistake of law may be 'reasonable' where the circumstances 'disclose substantial grounds for the officer to have concluded he had legitimate justification under the law for acting as he did.'" *Holland*, 268 F.3d at 1196, quoting *Saucier*, 533 U.S. at 208.

*Plaintiffs' Excessive Force Claim*

As noted above, the first stage of analysis under *Saucier* is to inquire into whether the facts alleged by the Plaintiffs demonstrate that the Defendant officers violated the Plaintiffs' constitutional rights. The Defendants appear to acknowledge that the Fourth Amendment protects against the application of excessive force. See, e.g., *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (In assessing the reasonableness of a seizure under the Fourth Amendment, "[b]ecause one of the factors is the extent of the intrusion, it is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out.") The Defendants maintain, however, that the injuries alleged by the Plaintiffs are not sufficient to support an excessive force claim.

5

The Defendants have characterized Sandra Vigil as "claim[ing] no physical or emotional injuries," and Sandra's statements in deposition seem to reflect this. The Plaintiffs clarify in their Response brief that "[w]hile Sandra Vigil claims no permanent physical injury . . . she was maced and thrown against a sink." The Tenth Circuit recently discussed the issue of whether proof of serious injuries is required to state a claim for excessive force:

> Physical injury mat be the most obvious injury that flows from the use of excessive force. Yet the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests– a person's "sense of security" and individual dignity. No physical injury was pleaded in *Baker* or *McDonald*. Nor was physical injury alleged in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which held that officers may be held liable in damages for violating persons' Fourth Amendment rights, including the use of unreasonable force.
>
> Keeping in mind that the "'touchstone of the Fourth Amendment is reasonableness,' . . . measured in objective terms by examining the totality of the circumstances," the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (citation omitted). We likewise decline to adopt a "bright-line" standard dictating that force cannot be "excessive" unless it leaves visible cuts, bruises, abrasions or scars.

*Holland*, 268 F.3d at 1195. It is true that courts have certainly emphasized the importance of physical injuries as evidence that excessive force was applied. See, e.g., *Saucier*, 533 U.S. at 209 (Court's finding that officer should be entitled to qualified immunity "is confirmed by the uncontested fact that the force was not so excessive that [the plaintiff] suffered hurt or injury.") However, given the Tenth Circuit's comments in *Holland*, it is not enough for the Defendants to base their motion for summary judgment as to Sandra's excessive force claim merely on the fact that she has not claimed any permanent physical injuries.

The other Plaintiff, Roberta Vigil, has alleged specific physical and emotional injuries. She

6

claims that her struggle with the officers resulted in permanent tendonitis in both elbows, and she contends that this condition causes her pain and restricts her activity. She also maintains that she has suffered from post-traumatic stress disorder following the incident. The Defendants argue, though, that 1) Roberta's physical injuries are only minor, because when she went to the emergency room on the night of the incident, she was not given any splints or bandages; 2) Roberta cannot show that her injuries resulted from excessive force, as opposed to from the movements she made to resist the officers; and 3) Her psychological injuries must not be severe, as she only saw a psychologist three times. The Plaintiffs contest the Defendants' characterization of Roberta's injuries as minor, and Roberta's treating physician has stated in deposition and affidavit that he has diagnosed her with tendonitis and post traumatic stress disorder. In light of the *Holland* court's somewhat expansive treatment of the types of harms that can potentially give rise to an excessive force claim, the Court cannot say at this stage that the injuries claimed by Roberta are necessarily inadequate to state a claim. As for the questions of causation, the first stage of *Saucier* concerns whether "the facts *alleged* show the officer's conduct violated a constitutional right." 533 U.S. at 201 (emphasis added). Roberta has alleged that her struggle with the officers caused her injuries.

Having found that the Plaintiffs' allegations concerning their injuries are adequate to support their claim of excessive force, this Court turns in greater detail to the first stage of the *Saucier* analysis: whether the Defendant officers violated the Plaintiffs' Fourth Amendment rights. In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Supreme Court outlined factors that courts should consider in determining whether a police officer applied excessive force: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

This Court has considered the Plaintiffs' version of events in light of the factors discussed in *Graham* and has concluded that, under the facts alleged by the Plaintiffs, the measures that the Defendant officers used to restrain the Plaintiffs were excessive. The crimes of which the Plaintiffs were apparently suspected, battery and disorderly conduct, are misdemeanors. The Defendants have provided little indication of any danger that the Plaintiffs posed to the officers and others, and the Plaintiffs deny that they physically provoked the officers. Although there appears to be no dispute that the Plaintiffs struggled with the officers, the Defendants have presented no evidence that the Plaintiffs were trying to flee the scene.

The next step, under the *Saucier* framework, is to examine whether the constitutional right at issue is clearly established. On a broad level, the answer is obvious– "there is no doubt that *Graham v. Connor* . . . clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201-202. However, the *Saucier* court emphasized that courts must ask more specifically if, under the specific circumstances of the case, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

The Plaintiffs have raised allegations which, if true, would suggest that the officers should have known that their conduct was exceeding appropriate boundaries. Under the Plaintiffs' version of facts, the police had little legitimate reason to be in the apartment in the first place, the Plaintiffs were not behaving in a particularly threatening manner, and the police initiated an unprovoked struggle with the Plaintiffs. At any rate, the circumstances of the encounter between

8

the Plaintiffs and the Defendant officers, as understood by the Court, do not reveal "substantial grounds for the officer[s] to have concluded [they] had legitimate justification under the law for acting as [they] did." *Saucier*, 533 U.S. at 208. This Court therefore finds that the Defendants' motion for summary judgment should be denied as to the Plaintiffs' excessive force claim.

*Plaintiffs' Wrongful Arrest Claim*

The Plaintiffs maintain that the Defendant police officers improperly arrested them without probable cause. Before this Court can inquire into the qualified immunity issues surrounding the lawfulness of the Plaintiffs' arrest, however, it must consider whether the Plaintiffs' wrongful arrest claim is barred by the principle outlined in *Heck v. Humphrey*, 512 U.S. 477 (1994).[1]

Plaintiffs' counsel conceded during the pretrial conference that the state court judge's disposition of the charges against Plaintiffs for resisting arrest amounted to a conviction. In *Heck*, the Supreme Court held that a plaintiff may not raise a § 1983 claim for "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff can show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. Under *Heck*, "the district court must consider whether a judgment

---

[1] This Court recognizes that there is an ongoing debate over the continued vitality of *Heck*, in light of the Supreme Court's opinion in *Spencer v. Kemna*, 523 U.S. 1 (1998). See, e.g., Bruce Ellis Fein, *Heck v. Humphrey after Spencer v. Kemna*, 28 New Eng. J. on Crim. & Civ. Confinement 1 (2002). The Tenth Circuit has not yet directly addressed the question of whether *Spencer* overruled the principle expressed in *Heck*. However, the Tenth Circuit has treated *Heck* as being good law in opinions issued after the *Spencer* decision. See, e.g., *Laurino v. Tate*, 220 F.3d 1213 (10th Cir. 2000). Therefore, this Court believes that it is still bound by *Heck* in this case.

9

in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.

In *Heck*, the Supreme Court provided the example of a hypothetical plaintiff "convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest." Id. at 487, n. 6. *Heck* does not permit a plaintiff in such circumstances to bring a § 1983 action, because "[i]n order to prevail . . . he would have to negate an element of the offense of which he has been convicted." Id. In contrast, "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." Id. at 487, n. 7. The Court reasoned that "[b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." Id. (internal citations omitted.).

Given that the Plaintiffs here have asserted a wrongful arrest claim, and given that the Plaintiffs were convicted of resisting arrest, it is clear that the *Heck* issue is an important one in this case. The key question is whether under New Mexico law, a conviction for resisting arrest necessarily implies that the underlying arrest was proper. The plain language of the relevant statute suggests that it does. NMSA § 30-22-1, the statute under which the Plaintiffs were convicted, provides that "[r]esisting, evading or obstructing an officer consists of"– among other things– "resisting or abusing any judge, magistrate, or peace officer in the *lawful discharge of his duties*." (emphasis added).

The Plaintiffs' conviction for resisting arrest thus indicates that the officers were executing a proper arrest. If this Court allowed the Plaintiffs to proceed with their challenge to the lawfulness of the arrest, and the Plaintiffs prevailed, the Plaintiffs' success would undermine the validity of the state court conviction. Thus the principles of *Heck* bar the Plaintiffs' wrongful arrest claim.

IT IS THEREFORE ORDERED that the Defendants' motion for summary judgment is granted as to the Plaintiffs' wrongful arrest claim and denied as to the Plaintiffs' excessive force claim.

_____
CHIEF UNITED STATES DISTRICT JUDGE